MANNING *v.* STATE.

(*Nashville*, December Term, 1952.)

Opinion filed March 6, 1953.

W. M. LEECH, of Charlotte, ROBERT S. CLEMENT, of Dickson, and VAL SANFORD, of Nashville, for plaintiff in error.

KNOX BIGHAM, Assistant Attorney General, for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Manning appeals from a conviction of murder in the second degree with a maximum prison sentence of 15 years.

The parties (plaintiff in error and deceased) and the witnesses to the homicide are colored people. The homicide occurred some time after midnight at the establishment of one Willie Beck. Beck was the proprietor of a combination funeral home, barbecue pit and grocery store. It seems that on this night a number of Negroes were having a crap game at this place but that the deceased was not participating in the game for some reason or other, merely sitting around the place. Later in the evening after the plaintiff in error had closed his place of business (he is a pool room operator) he came by this place and after using the telephone or attempting to phone his wife he went where these other Negroes were shooting craps and then after some argument between the plaintiff in error and deceased the homicide occurred. We cannot make any further statement of the facts or express our view on the facts nor on various assignments of error

which we do not consider material since we feel that it is necessary to reverse and remand the case for a new trial on certain matters hereinafter taken up in this opinion. We deem it that other assignments here made may not arise on a future trial and for this reason we see no need to comment on these things.

■ The third assignment seeks a reversal on the alleged misconduct of the District Attorney General or his Assistant in cross-examining the witness Elzie Vanleer. Technically this assignment is without merit and we cannot consider the same because there was no objection by counsel for the plaintiff in error to this cross-examination. Our rules, Rule 14(4), 185 Tenn. 868. We think that comment on this assignment should be here expressed by us due to its apparent connection with the assignment under which we think this case will have to be reversed and remanded.

The witness Vanleer had been subpoenaed on behalf of the State but was not called by them to testify. The defense (plaintiff in error) called this witness and the witness testified on his behalf to the fact that the deceased had used certain words to the plaintiff in error to the effect that he, the plaintiff in error was a "damn liar". It was one of the contentions of the plaintiff in error that due to this language that he had become very provoked and this would in effect reduce the degree of this homicide. On cross-examination the Assistant Attorney General for the State attempted to intimidate this witness and to infer that he had changed his story to the opposite of what he had told this Assistant Attorney General and the Attorney General when they had talked to him. The witness, however, stuck to his story. And then the District Attorney General arose and said:

(By Attorney General Reeder Parker, as witness was leaving the stand)

"Q. How do you spell your name? A. E-l-z-i-e Vanleer."

(By Attorney General Parker)

"I'm going to indict you for perjury."

As heretofore said since no objection was made to this by the plaintiff in error at the time technically we cannot reverse the case on this ground but we feel that such conduct on the part of the District Attorney General is very prejudicial to the plaintiff in error and the trial or the conduct of examination of witnesses should not be conducted in this manner. It is commendable for the District Attorney General to be very vigorous in his prosecution and in his cross-examination of witnesses and try through reasonable legitimate cross-examination to show that they are telling an untruth. This may be done in many ways. In the instant case of course the parties who heard this witness testify to the contrary could certainly be brought in and used to discredit this testimony. But when a District Attorney General, possessing the power that he does, makes a statement of the kind it is certainly without any evidence before the jury upon which to base the fact and leave the impression with the jury, and a very strong impression, that the witness is a perjuror. Indeed, having confidence, as no doubt they had, in his good faith, the jurors would be more strongly influenced against the plaintiff in error and his theory than if they believed the District Attorney was attempting to take an unfair advantage of the witness then testifying. We have been cited two cases very much in point on the subject. These cases are *People* v. *McGee*, 24 Cal. App. 563, 141 P. 1055, and *State* v. *Moran*, 99 Conn. 115, 121 A. 277, 36 A. L. R.

862. Many other cases from other jurisdictions are therein cited.

The argument of the District Attorney General and his assistant to the jury at the conclusion of all the evidence is assigned as error in that they injected into this argument the racial issue and thus deprived the plaintiff in error of a fair trial must be sustained.

Among other things the Assistant Attorney General in his argument said:

"Did he bring a single, solitary colored person in here that he knew and did business with to say that he was a man of good character and known for peace and quietude? These boys were afraid of him. Of course they were. What's he done? (Objection by Judge Leech)."

And again later he said:

"And then they talk about character witnesses, Lipe Henslee. I never heard of a colored person who didn't have Lipe. Lipe will do anything to help anybody out."

This argument seems to us to have been carried to an extreme when the District Attorney General said:

"I want to tell you something else. I don't care who hears it. I wish Judge Fort were here sitting in this courtroom. I remember a scolding he gave some people who had come into this court who knew absolutely nothing about the colored folks. I would rather lose my right arm than to go on a colored mans good character * * * Let me tell you this, how can any white man come in here and tell you that he knows the reputation of a colored man in this Community—it was a disgrace for an officer of the Town of Dickson to come in here and say that man had a good character. I think that's a disgrace to any County."

In making this argument the District Attorney General had reference to certain police officers and other prominent white citizens of the County who testified as to the plaintiff in error's good character. All of the witnesses who testified as to his good character were white people. By making this argument the District Attorney General held up to scorn and ridicule the white men who testified as to the plaintiff in error's good character.

The late Chief Justice Green speaking for this Court in *Roland* v. *State,* 137 Tenn. 663, 194 S. W. 1097, said after quoting from the argument of the District Attorney General in that case as follows:

" 'What I have said about these two witnesses goes. I would say the same about any white man that would come into court to testify in favor of a nigger if I was going to hell the next minute. The state has nothing to withdraw and nothing to apologize for'."

Then said Judge Green after quoting the above:

"Such an ebullition as this from a state's attorney cannot be overlooked under the circumstances appearing. An appeal to race prejudice on the part of a sworn officer of the state is inexcusable.

"If white men who testify in behalf of a negro were to be thus held up to scorn, the inference followed that jurors who voted to acquit a negro were beneath consideration.

"Our judges, court officials, and jurors, are uniformly white men. The white race is dominant and the negroes are, in a sense, our wards. When a negro is on trial, it is the duty of the court and counsel to be at special pains to see that race prejudice is entirely eliminated from all proceedings. Otherwise, justice cannot be attained. All races are equal before the law and have the same rights in our courts. No officer

of the state can be allowed to forget this, and no language by such officer that tends to arouse race feeling, even though used in heat of argument, can be passed without rebuke.''

■ Of course it is the duty of the District Attorney General to prosecute all offenders with utmost vigor but at the same time Attorneys General should not be intemperate in the language they use in an effort to try to influence a jury's decision. The District Attorney General is a quasi judicial officer, representing the State of Tennessee and in doing so he is presumed to act impartially in the interest of justice.

This Court in *Watkins* v. *State,* 140 Tenn. 1, 203 S. W. 344, 345, said:

''A verdict in a criminal case is not to be striven for by him who represents the state as a need for his forensic or histrionic ability. The vindication of justice, not of advocacy, is the true concern. Still less is a verdict to be sought under conditions which may not untruly be said to take something of the color of jury hectoring.''

We think for the reason above stated the case must be reversed and remanded for a new trial.

TOMLINSON, Justice, not participating.