**Carol PACE, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Supreme Court of Tennessee.

May 29, 1978.

Jerry H. Summers, Chattanooga, for appellant.

Tennessee Ass'n of Criminal Defense Lawyers, Robert E. Burch, Dickson, amicus curiae.

Brooks McLemore, Jr., Atty. Gen., Robert L. Tucker, Asst. Atty. Gen., David L. Raybin, Asst. Atty. Gen., Nashville, for appellee.

COOPER, Justice.

## OPINION

This case arose in the Criminal Court of Hamilton County. The appellant, Carol Pace, protests a ruling by the trial judge of that court, holding certain portions of the pretrial diversion statute, T.C.A. § 40–2105 et seq., unconstitutional.

The appellant was indicted for fraudulent breach of trust. She asked that the district attorney place her on pretrial diversion. Upon his refusal, she petitioned the court to review his decision, pursuant to the provisions of T.C.A. § 40–2108(b). In an order dated November 1, 1977, the court dismissed her petition, holding that several portions of T.C.A. § 40–2108, including the one on which the appellant relied in seeking review, were unconstitutional. On November 4, 1977, the appellant was found guilty of the offense charged. The trial judge sentenced her to serve eleven months and twenty-nine days, with that sentence to be

suspended upon certain conditions being met. The appellant then renewed her exception to the trial judge's refusal to review her request for pretrial diversion, and was granted an appeal. As the sole issue presented is the constitutionality of T.C.A. § 40–2108, that appeal is properly before this court.

At the time of the appellant's petition, T.C.A. § 40–2108 provided in pertinent part as follows:

(a) Memorandum of Understanding Permitted. In cases where the defendant does not have a previous felony conviction, the parties may by a memorandum of understanding agree that the prosecution will be suspended for a specified period, not to exceed two (2) years from the filing of memorandum of understanding, for any offense the maximum punishment for which is confinement for ten (10) years or less and/or a fine, on one or more of the following conditions to be observed by the defendant during the period:

\*　　\*　　\*　　\*　　\*　　\*

(b) Filing of Memorandum of Understanding and Notice. Promptly after the memorandum of understanding is made, the prosecuting attorney shall file it with the court together with a notice stating that pursuant to memorandum of understanding of the parties . . ., the prosecution is suspended for a period specified in the notice. . . . Said memorandum of understanding must be approved by the trial court before it shall be of any force and effect.

The trial court shall approve said memorandum of understanding unless:

(1) Prosecution has acted arbitrarily and capriciously.

(2) Said memorandum of understanding was obtained by fraud.

(3) The diversion of the case is unlawful.

The defendant shall have a right to petition for a writ of certiorari to the trial court for an abuse of prosecutorial discretion. If the trial court finds that the prosecuting attorney has abused his discretion in failing to divert, the trial court may order the prosecuting attorney to place the defendant in a diversion status on such terms and conditions as the trial court may order. . . .

(b) \*　　\*　　\*

(c) \*　　\*　　\*

(d) \*　　\*　　\*

(e) Dismissal with prejudice. The trial court shall dismiss with prejudice any warrant or charge against the defendant upon the expiration of ninety (90) days after the expiration of the period of suspension specified in the memorandum of understanding is filed [sic], provided no termination of the memorandum of understanding has been filed under the provisions of subsection (d). If the prosecution is dismissed with prejudice, jeopardy shall attach, and the court shall make a minute entry to that effect.

The last two paragraphs of subsection (b) were added by amendment in 1976, and in the same amendment, in subsection (e) the word "shall" was substituted for the phrase "may in its discretion" preceding "dismiss."

The trial judge held the statute unconstitutional on three grounds: First, that the provision in T.C.A. § 40–2108(b), providing for review by the trial judge of a refusal by the prosecutor to divert, is "so vague, ambiguous, and uncertain as to be incapable of coherent application"; secondly, that the 1976 Act amending T.C.A. § 40–2108 was broader than the caption of either the original act or the 1976 amendment, and was thus unconstitutional under Article II, § 17 of the Tennessee Constitution; and, thirdly, that the provision of T.C.A. § 40–2108(b) mandating approval of a memorandum of understanding by the trial judge except in certain limited situations was "an unwarranted invasion of the functions of the Judiciary." We find no basic defect in the act.

A statute is invalid for vagueness only when "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Underwood v. State*, 529 S.W.2d 45, 47–48 (Tenn.1975). We do not believe that this statute presents

such difficulties in interpretation. The statute vests in the prosecuting attorney the decision as to whether a given defendant is suitable for pretrial diversion and the terms under which diversion will be granted. However, that discretion is not unbridled: It must be exercised so as to serve the interests of justice. *Compare United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975); *United States v. Falk*, 479 F.2d 616 (7th Cir. 1973). To that end, it is subject to review by the trial court upon proper application by the defendant. T.C.A. § 40–2108(b). A similar standard has been employed without unreasonable difficulty in the appellate review of a trial judge's rulings on applications for suspension of sentence under the provisions of T.C.A. § 40–2901 et seq. *See Stiller v. State*, 516 S.W.2d 617 (Tenn.1974). We anticipate that trial judges will have no greater difficulty applying the provisions of the pretrial diversion statute.

As to the holding that the caption of the amending act was defective under the requirements of Article II, Section 17 of the Constitution of Tennessee, it is fundamental that defects in the caption of the amendatory act, if any, were cured through subsequent action of the legislature codifying the amendment. *International Harvester Co. v. Carr*, 225 Tenn. 244, 466 S.W.2d 207 (1971).

The trial judge interpreted the amendment to T.C.A. § 40–2108(b) as depriving him of discretion to refuse to divert an eligible defendant with whom the prosecuting attorney had entered into a memorandum of understanding, regardless either of the terms of the memorandum or the merits of the case. He found this to be an impermissible invasion of the function of the judiciary, and as such to be a violation of the separation of powers decreed by Article II, Sections 1 and 2 of the Constitution of Tennessee. If we were to interpret the statute similarly, we would agree. *See, e. g., Mabry v. Baxter*, 58 Tenn. 682 (1872). *Compare Underwood v. State*, 529 S.W.2d 45 (Tenn.1975). However, we do not read the statute to so restrict the power of the trial judge. The pretrial diversion statute,

as amended, expressly provides that the memorandum of understanding between the prosecuting attorney and a defendant has no force and effect until it is approved by the trial judge. The trial judge is directed to approve the memorandum of understanding *unless* the memorandum of understanding was obtained by fraud, or the diversion of the case is unlawful, or, more importantly, the prosecuting attorney acted arbitrarily and capriciously in entering into the memorandum of understanding. This latter grant of authority to the trial judge, in our opinion, confirms in him the power and the responsibility to review a memorandum of understanding submitted to him for approval with the view toward determining if there has been an abuse of prosecutorial discretion, either in entering into the memorandum of understanding or in fixing its terms. And, in those instances where the trial judge finds that the terms of the diversion are so lenient, or the character of the defendant such that diversion patently would not be in the interests of justice, the trial judge has the authority to disapprove the memorandum of understanding and effectively keep the defendant out of the diversionary program or have the terms of the memorandum of understanding modified. Such a statutory scheme, in our opinion does not impermissibly intrude on the judicial function, or restrict the power of the trial judge to insure that justice is done in his court, and thus does not violate the separation of powers provisions of Article II, Sections 1 and 2, of the Constitution of Tennessee.

The pretrial diversion act being constitutional, it follows that the trial judge was in error in dismissing appellant's petition for review of the prosecuting attorney's decision not to place appellant on pretrial diversion and in requiring appellant to stand trial on the indictment charging her with fraudulent breach of trust. Accordingly, the appellant's conviction and the suspension of her sentence is set aside. The case is remanded to the trial court for a review of the prosecuting attorney's refusal to place appellant on pretrial diversion and for

such further action as may be necessitated by the trial judge's decision on the completion of his review.

FONES, BROCK, and HARBISON, JJ., concur.

HENRY, C. J., filed concurring opinion in which FONES, J., concurred.

HENRY, Chief Justice, concurring.

This Court is called upon, for the first time, to determine the constitutionality of our pretrial diversion statutes, Sec. 40–2105, et seq., T.C.A.

While I concur generally in the conclusion reached in the majority opinion, I am persuaded that it does not contain a sufficient articulation of the significant issues involved in this controversy.

## I.

### Respective Insistences of the Parties

Appellant insists that the trial judge erred in holding that the pretrial diversion statutes were an unconstitutional invasion of the function of the judiciary, and that the provisions were so vague, ambiguous and uncertain as to be incapable of coherent application.

The Tennessee Criminal Defense Lawyers Association in *amicus curiae* brief agrees, in substance, with appellant. It insists that the Attorney General is a judicial officer and, therefore, our statutory scheme does not collide with the doctrine of separation of powers because the District Attorney General and the trial court "are of the same branch of government."

The State Attorney General, who normally appears in litigation as a proponent of the constitutionality of state statutes, takes the position that this scheme of pretrial diversion constitutes an unconstitutional infringement upon the role of the judiciary. Simultaneously, he takes the position that Sec. 40–2108(b), providing for judicial review of the District Attorney's decision not to divert, is an unconstitutional infringement upon the power of the District Attorney General. The Attorney General further asserts that these review provisions are unconstitutionally vague.[1]

## II.

### The Nature of the Office of District Attorney General

It is necessary first to determine the nature of the office of District Attorney General, for if this is a judicial office, there is no substantial separation of powers problem.

The District Attorney General is a constitutional officer. Art. VI, Sec. 5, a part of the Judicial Article of our constitution, provides for an "Attorney for the State for any circuit or district, for which a Judge having criminal jurisdiction shall be provided by law."[2]

This Court has not heretofore addressed the nature of the office of District Attorney General; however, in *Manning v. State*, 195 Tenn. 94, 100, 257 S.W.2d 6, 9 (1953), the Court, without citing any authority, stated:

> The District Attorney General is a *quasi judicial* officer, representing the State of Tennessee. (Emphasis supplied.)

An examination of *Manning*, however, will reveal that this statement was made in the context of a case where the trial court was reversed because of improper argument

---

1. The Attorney General also attacks the caption of the pre-trial diversion statute, taking a position contrary to that normally asserted in this Court. I do not consider the caption deficiency, if such there is, to be of any particular significance and, therefore, do not deal with it in this opinion.

2. The fact that the office of District Attorney General is provided for in the Judicial Article is of no significance. The same article also provides for clerks of the Supreme Court, clerks and masters and clerks of the Inferior Courts (Sec. 13) and for constables (Sec. 15). This, of course, does not make clerks, clerks and masters and constables judicial officers. These officials, along with the Attorney General and the District Attorney General are listed in the Judicial Article solely for convenience and it is appropriate that they be so listed since they operate in, and interact with, the judicial department.

by the prosecutor. What the Court was actually holding was that the District Attorney General is an "officer of the Court."

In the introduction to the ABA Standards Relating to the Prosecution Function, at page 18, it is stated:

The American prosecutor, representing the executive branch under a system of divided powers defined in a written constitution, is an officer of the court only in the same sense as any other lawyer.

As this Court, speaking through then Chief Justice Lansden, declared in *State v. Costen*, 141 Tenn. 539, 545, 213 S.W. 910, 911 (1919), "[h]e has no judicial power, and his ministerial power must be responsive to the direction of the state, which is his client."

In *People v. District Court in and for County of Larimer*, 186 Colo. 335, 527 P.2d 50 (1974), the Supreme Court of Colorado declared:

While he is an officer of the court as any other attorney, a district attorney *is not a judicial officer* not (sic) a part of the judicial branch of the government. A district attorney belongs to the executive branch. (Emphasis supplied). 527 P.2d at 52.

The American Bar Association Standards Relating to the Prosecution Function, Sec. 1.1(a), declare:

The office of prosecutor, *as the chief law enforcement official* of his jurisdiction, is *an agency of the executive* branch of government which is charged with the duty to see that the laws are faithfully executed and enforced in order to maintain the rule of law. (Second emphasis supplied).

I have no hesitancy in holding that the District Attorney General is an officer of the executive department.[3]

Thus, the apparent problem of separation of powers stems from the fact that the District Attorney General and the trial judge are members of different branches of government. I regard this issue to be more apparent than real. This necessarily follows from the fact that the precise preservation of the demarcation between the three branches of government is not always possible and the boundary lines frequently tend to be fuzzy and blurred. *Bank of Commerce and Trust Company v. Senter*, 149 Tenn. 569, 260 S.W. 144 (1924). See also *Underwood v. State*, 529 S.W.2d 45 (Tenn.1975).

Appropos this discussion we quote with approval from *State v. Leonardis*, 73 N.J. 360, 375 A.2d 607 (1977):

The aim of the constitutional provision is not to prevent cooperative action among the three branches of government, but to guarantee a system of checks and balances. This notion of a blending of powers is expressed in various opinions by both this Court and the United States Supreme Court, interpreting the State and Federal Constitutions. In *Brown v. Heymann*, 62 N.J. 1, 297 A.2d 572 (1972), Chief Justice Weintraub explained:

It is well to repeat that while the doctrine of separation of powers is designed to prevent a single branch from claiming or receiving inordinate power, there is no bar to cooperative action among the branches of government. On the contrary, the doctrine necessarily assumes the branches will coordinate to the end that government will fulfill its mission. [62 N.J. at 11, 297 A.2d at 578]

This same theme—approving cooperative effort among the three branches of government—was expressed by Justice

---

3. While not precisely pertinent to any issue here presented, it is not irrelevant to the issue to note that a State Attorney General, under our system of government, is almost universally held to be an executive officer. See, e. g. *Phyle v. Duffy*, 334 U.S. 431, 68 S.Ct. 1131, 92 L.Ed. 1494 (1948); *State v. Finch*, 128 Kan. 665, 280 P. 910 (1929); *People v. Vaughn*, 49 Ill.App.3d 37, 6 Ill.Dec. 932, 363 N.E.2d 879

(1977); *People v. Stinger*, 22 Ill.App.3d 371, 317 N.E.2d 340 (1974); *Commonwealth v. Bardascino*, 210 Pa.Super. 202, 232 A.2d 236 (1967). At common law he was the chief legal representative and advisor of the Crown. Under the colonial governments he was appointed by the colonial governors. Practically all common-law jurisdictions initially adopted the office of attorney general as it existed in England.

Jackson in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952): "[w]here the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government." 343 U.S. at 635, 72 S.Ct. at 870, 96 L.Ed. at 1199 (Jackson, J., concurring). And Judge Gibbons of the Third Circuit recently described the doctrine as calling for "[a] dispersal of decisional responsibility in the exercise of each power, as distinguished from a separation of powers . . . ." Gibbons, "The Interdependence of Legitimacy," 5 Seton Hall L.Rev. 435, 436 (1974). See also, Davis, Administrative Law Treatise § 1.09 at 68 (1958) ("The danger is not blended power. The danger is unchecked power."). 375 A.2d at 612–13.

In my judgment, nothing in our pretrial diversion statutes runs counter to the doctrine of separation of powers.

### III.

#### *Prosecutorial Discretion*

As a further predicate for the conclusions I ultimately reach, and after holding that the District Attorney General is not a judicial officer, I now turn to the critical question of prosecutorial discretion.

While our Constitution (Art. VI, Sec. 5) creates the office and various statutes define and assign duties to the District Attorney General (see particularly Sec. 8–703, T.C.A.), there are neither statutory nor judicial criteria governing the operation of the office.

He or she is answerable to no superior and has virtually unbridled discretion in determining whether to prosecute and for what offense. No court may interfere with his discretion to prosecute or not to prosecute, and in the formulation of this decision he or she is answerable to no one. In a very real sense this is the most powerful office in Tennessee today. Its responsibilities are awesome; the potential for abuse is frightening. Indeed, as an incident of separation of powers, the courts may not interfere with the discretion of the District Attorney in their control over criminal prosecutions. See *United States v. Cox*, 342 F.2d 167, at 171 (5th Cir. 1965).

This prosecutorial discretion is deeply rooted in the common law and is a vital part of our common-law tradition. But this discretion has its outer limits. When the charging process—in this state the indictment—has been completed, the disposition of the charge becomes a judicial function.

Under Tennessee law prior to the adoption of the pre-trial diversion statutes, there were two basic methods for the termination of a criminal prosecution, viz:

a) by verdict or judgment

b) by the entry of a *nolle prosequi*.[4]

Pre-trial diversion is a third method of termination; but it is obvious that it is not a termination pursuant to a finding of guilt or innocence. It does, however, partake of the nature of a *nolle prosequi*. Therefore, it is appropriate that we examine the nature of the District Attorney General's involvement in cases wherein a criminal case is nolled.

As is pointed out in *Commonwealth v. Kindness*, 247 Pa.Super. 99, 371 A.2d 1346 (1977):

The authorities are virtually unanimous that the historical power to "*nol pros*" belonged at common law solely to the Attorney General and remains an exclusive prosecutorial power in the absence of a state constitutional or statutory provision to the contrary. 371 A.2d at 1349.[5]

---

4. The entry of a nolle, of course, does not bar further prosecution under a new indictment. *State ex rel. Hobbs v. Murrell*, 170 Tenn. 152, 93 S.W.2d 628 (1936).

5. In *Kindness*, the Court quotes from a Texas case as follows:

"How firmly the rule vesting the exclusive power in the prosecuting officer to dismiss a case was established at common law is forcibly and effectively illustrated in a conversation relating to the commitment for seditious language of certain persons belonging to a sect called 'Prophets.' Lacy, one of the friends of

This firmly entrenched common-law rule has been abrogated in Tennessee. Sec. 40–2101, T.C.A., provides:

> After indictment found, no criminal prosecution can be dismissed, discontinued, or abandoned without leave of the court.

In *State v. Costen, supra,* this Court, citing 12 Cyc., 374, defined a *nolle prosequi* as being

> a formal entry of record by the attorney-general by which he declares that he will no longer prosecute the case. 141 Tenn. at 545, 213 S.W. at 911.

After so defining it the Court stated: The judge has *no participation in it, except to give his consent to such order,* and permit its entry upon the record. We are not unmindful of the fact that this power has been exercised by the attorneys-general in this State for many years, but the right to so exercise it is not conferred by the Constitution. The legislature, therefore, has the power to take it away, and when it does so it is not an interference, in a constitutional sense, either with the judicial power of the State, or the ministerial duties of the attorneys-general. With the policy of the statute neither we nor the attorneys-general have anything to do. It is a plain mandate of the legislature to which we must all bow. (Emphasis supplied). 141 Tenn. at 545, 213 S.W. at 911.

It is obvious under Sec. 40–2101, T.C.A., and *Costen* that when a criminal prosecution has gone beyond the charging stage, that is to say, after indictment is returned, the matter has left the domain of the prosecutor and has entered into the realm of the court. See also *State ex rel. Hobbs v. Murrell,* 170 Tenn. 152, 93 S.W.2d 628 (1936).

This case is authority for the general proposition that a conditional nolle may be entered and does not become final until the condition is performed. See also 22A C.J.S. *Criminal Law* § 461 (1961). Again the similarity between a nolle and pre-trial diversion is evident.

These considerations necessitate a discussion of the purpose and nature of pre-trial diversion and require an analysis of this procedure in the light of the respective responsibilities of the District Attorney General and the Trial Judge.

### IV.

### *The Purpose and Nature of Pre-trial Diversion*

The self-evident purpose of pre-trial diversion is to spare appropriately selected first offenders the stigma, embarrassment and expense of trial and the collateral consequences of a criminal conviction. The result contemplated is the restoration of successful divertees to useful and productive citizenship. This is a legitimate and praiseworthy objective and one that has now become the public policy of the State.

While pre-trial diversion is relatively new,[6] various courts have discussed the nature of the concept. We examine some of these decisions.

In *People v. Superior Court of San Mateo County,* 11 Cal.3d 59, 113 Cal.Rptr. 21, 520 P.2d 405 (1974), the California Supreme Court held that the decision to divert is "an exercise of judicial power [and] cannot constitutionally be subordinated to a veto of the prosecutor."[7] 11 Cal.3d at 65, 113 Cal. Rptr. at 25, 520 P.2d at 409.

The Court made this pertinent observation:

---

the prisoners committed, assumed to intercede for them, and upon his conference with Lord Holt the following colloquy is reported:
> "Lacy: 'I come to you, a prophet from the Lord God, who has sent me to thee, and would have thee grant a nolle prosequi for Mr. Atkins, His servant, whom thou hast cast into prison.' Chief Justice Holt: 'Thou art a false prophet, and a lying knave. If the Lord God had sent thee, it would have been to the Attorney General, for He knows that it belongeth not to the Chief Justice to grant a nolle

prosequi, but as Chief Justice, I can grant a warrant to commit thee to bear him company.' 2 Campbell's Lives of the Chancellors, 173."

**6.** For history of concept see *State v. Leonardis,* 71 N.J. 85, 363 A.2d 321 (1976).

**7.** California law provided that the case would not be diverted "unless the District Attorney concurs." See Cal. Penal Code Sec. 1000.2 (West) prior to 1975 Amendment.

The judicial power is compromised when a judge, who believes that a charge should be dismissed in the interests of justice, wishes to exercise the power to dismiss but finds that before he may do so he must bargain with the prosecutor. The judicial power must be independent, and a judge should never be required to pay for its exercise. 11 Cal.3d at 64, 113 Cal.Rptr. at 25, 520 P.2d at 409.

In a companion case, *Sledge v. Superior Court of San Diego County*, 11 Cal.3d 70, 113 Cal.Rptr. 28, 520 P.2d 412 (1974), the California Court held that the "preliminary screening for eligibility conducted by the district attorney . . . [under] standards prescribed by the statute" is not judicial in character and does not violate the constitutional requirement of separation of powers. This holding is in the context of a suggested invasion upon the power of the judiciary. Further it is in the context of a statutory scheme which, unlike ours, gave "no indication [that] the Legislature intended the prosecution to be interrupted for interlocutory review of this issue." 11 Cal.3d at 76, 113 Cal.Rptr. at 32, 520 P.2d at 416.

I agree that the action of the District Attorney under Tennessee law is not judicial, strictly speaking, and that conferring upon him the right to make a tentative determination of eligibility does not, in any sense, infringe upon the prerogatives of the judicial branch.

Perhaps the most comprehensive treatment of the concept of pre-trial diversion and of the underlying issues is *State v. Leonardis*, 73 N.J. 360, 375 A.2d 607 (1977). The principal issue there addressed was "whether, in light of the doctrine of separation of powers, the Court had the power, either before or after indictment, to divert a defendant over the prosecutor's objection." 375 A.2d at 610–611.

The Court held that (1) "great deference should be given to the prosecutor's determi-nation not to consent to diversion," 375 A.2d at 618; (2) the scope of review was narrow and limited; (3) the decision lies first with the program director and prosecutor; and (4) there is a heavy burden upon the defendant to overcome a prosecutorial veto.[8]

In reaching these conclusions the Court considered a number of issues. First, it disposed correctly, in my view, of the separation of powers issue by holding that the decision to divert a criminal defendant is a "quasi-judicial" function. After so doing, the Court said:

> Our recognition that the decision to admit or reject an applicant for pretrial intervention is an exercise of quasi-judicial power obviates our need to discuss the analogies that the parties draw between [pretrial diversion] programs and administrative agencies. *Within a wholly judicial sphere we are not confronted by potential conflicts with either the executive or the legislative branches of our government*; similarly, we are not faced with the need to defer to the expertise of an administrative body. (N.J. Court's emphasis). 375 A.2d at 615.[9]

I regard this as a valid distinction. Even if pre-trial diversion be classified as wholly executive and nonjudicial in character, it is a procedure operating wholly within the milieu of the judicial department and the conventional separation of powers dichotomy would have no relevance.

Next, the *Leonardis* Court asserted the authority of the courts to review prosecutorial decisions upon a "showing of patent and gross abuse." But, said the Court, even absent the quasi-judicial nature of diversion, the review "would be consistent with the traditional role which courts have exercised in safeguarding individuals from abusive governmental action"; and the Court noted that "[t]he judiciary is commonly called upon to review the rationality of

---

8. In New Jersey pre-trial diversion was accomplished by Rule of Court and much of the opinion was devoted to the Court's power under a Rule of Court.

9. There is no conflict between this holding and that heretofore quoted from *Kindness, supra*. Each is founded on acceptable legal practices.

decisions by other branches of government or agencies with special expertise." 375 A.2d at 615.

Finally, the Court noted that "diversion entails more than merely the charging function, and hence, cannot be said to fall solely within the discretion of the prosecutor." 375 A.2d at 617.

## V.

### Conclusion

Pre-trial diversion, a procedural alternative to traditional system of prosecution followed, in appropriate instances, by post-trial probation, is essentially judicial in character. As a minimum it is quasi-judicial.

It represents a declaration of public policy by the legislature that diversion of certain classes of offenders from the normal criminal process, in an effort to rehabilitate and restore them to useful and productive citizenship and simultaneously to conserve judicial manpower and reduce court congestion, is in the public interest. This is a legitimate end of government.

Diversion may not be regarded as a mere extension of the charging process. It does not come into play until after indictment.[10] The plan of diversion, or the denial thereof, *follows* indictment and comes after the prosecutor has fully discharged all discretionary functions and after the prosecutorial die has been cast. Once committed to prosecution, the case is *before the court* for disposition. The process, at this stage, becomes fundamentally judicial and must end in a verdict, a *nolle* or pre-trial diversion.

Diversion may be viewed as a specialized and conditional *nolle prosequi* or as a pre-trial probation system or as a wholly new, novel and innovative idea. The result in either event is the same: the jurisdiction of the court has been invoked by indictment

and disposition becomes a judicial responsibility.

I do not view the statute as constituting any significant infringement upon the function of the prosecutor. In point of fact, it imposes no restraint upon his right to prosecute or to decline to prosecute. The Court only reviews his action after the matter is pending before the Court. The Court's traditional role of presiding over the disposition of pending litigation is accomplished independent of the inclination and insistences of counsel.

Nor do I regard it as an invasion upon the prerogatives of the trial judge. It is true that his review is limited—and properly so. The action of the prosecutor is presumptively correct and it should only be set aside on the basis of patent or gross abuse of prosecutorial discretion.

The memorandum of understanding is only effective when it has been approved by the trial judge. It is true that his approval is mandatory except when the District Attorney General has acted arbitrarily and capriciously [patent or gross abuse of discretion"] or the memorandum was procured by fraud or the diversion is unlawful. See Sec. 40–2108(b), T.C.A.

But these exceptions are applicable only when an agreement has been reached and a memorandum of understanding has been filed. Clearly, it is within the province of the legislature to require the approval of an agreement made by the parties. This is the procedure by which the public policy directive is enforced.

In those cases where the parties are unable to agree and do not enter into a memorandum of understanding, the trial judge is given the right to review the case for an abuse of prosecutorial discretion. Sec. 40–2108(b), T.C.A. It is true that the act does not define the phrase "abuse of prosecutori-

10. The statute does not make this entirely clear but this conclusion inheres in the very nature of the process. Had the Legislature intended that it be applied after the arrest of a criminal defendant, the result would have been an unwarranted *invasion of the authority and power* of the District Attorney General, whose prose-

cutorial discretion, unfettered at common law, may not be abridged during the charging process that is to say, prior to the indictment. We deal with the statute and apply it so as to adhere to the strong presumption favoring the validity of legislative enactments.

al discretion." The phrase "abuse of discretion" is one of antiquity in the law, and to the bench and bar its meaning is clear.

Because pre-trial diversion is, in effect, pre-trial probation, I consider it a fair approach to read into the statute the provisions of Sec. 40–2904, T.C.A., relating to the discretion of the trial judge in granting probation. There, the trial court acts on the basis of a report which "shall inquire into the circumstances of the offense, criminal record, social history, and present condition of the defendant."

These are among the considerations involved in determining whether there was an abuse of prosecutorial discretion.

As we observed in *Stiller v. State*, 516 S.W.2d 617, 622 (Tenn.1974):

"The whole horizon of criminal justice is dotted with discretion—from whether to arrest; whether to allow bail and how much; whether to prosecute and for what; whether to plea bargain and what to accept or to reject . . . ."

All these functions rest within the unbridled and undefined discretion of the District Attorney. I cannot say that trial judges are unable to review a prosecutorial decision to withhold diversion merely because the statute contains no glossary of terms.

I find Tennessee's pretrial diversion statutes to be constitutional in all respects.

I would vacate the judgment of the trial court, direct that the record of conviction be expunged and remand for an evidentiary hearing on the question of whether the action of the District Attorney in failing to agree to pre-trial diversion, was arbitrary or capricious.

Justice FONES concurs in this opinion.