**Virgil BLACKWELL, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, at Jackson.

June 19, 1980.

Robert T. Keeton, Jr., Huntingdon, for appellant.

Jennifer Helton Small, Asst. Atty. Gen., Nashville, John L. Williams, Dist. Atty. Gen., Huntingdon, Billy C. Blow, Asst. Dist. Atty. Gen., McLemoresville, for appellee.

## OPINION

DAUGHTREY, Judge.

The appellant–defendant, Virgil Blackwell, was indicted for driving under the influence of an intoxicant (D.U.I.), first offense, and sought participation in a pre–trial diversion program under T.C.A. § 40–2108. The district attorney refused to enter a memorandum of understanding on the grounds that the statute is unconstitutional, that there are no facilities for diversion in his circuit, that the diversion statute is inapplicable to the D.U.I. statute because the latter statute contains a recidivist provision, and, finally, because he personally disagreed with the concept of pre–trial diversion.

■ None of these grounds is legally valid. Our Supreme Court has upheld the constitutionality of the diversion statute, *Pace v. State*, 566 S.W.2d 861, 864 (Tenn. 1978), and has ruled that it creates a "*statewide* statutory scheme for the diversion of certain classes of offenders from the normal criminal process," *Dearborne v. State*, 575 S.W.2d 259, 262 (Tenn.1978) (emphasis supplied). Thus, under the express holding of *Dearborne*, the District Attorney may not decline to enter a memorandum of understanding for "lack of facilities." Moreover, to permit denial of diversion based upon an individual prosecutor's philosophical disagreement with the value of the program would elevate the District Attorney to a

position of authority higher than that of the State legislature, which through enactment of the program has mandated its utilization in appropriate cases. Refusal to enter a memorandum of understanding under T.C.A. § 40–2108 on such a basis constitutes a clear abuse of discretion.

The trial judge nevertheless held that the district attorney could deny the defendant the opportunity to participate in a diversion program based on the nature of the offense of driving under the influence of an intoxicant. He noted in a memorandum opinion that to permit diversion and possible expungement upon completion of the program would create a recording problem that would frustrate the recidivist provisions of T.C.A. §§ 55–10–601 et seq. if the defendant were to be arrested for a subsequent D.U.I. offense. He also concluded that "some punishment" was necessary in D.U.I. cases because of their "potential for violence" and the need for deterrence.

■ We conclude that the trial judge's order is not legally supported by the record in this case. The trial judge expressly found that in all respects the defendant is deserving of being placed on pre–trial diversion, *but for* the nature of the offense. This court has previously held that a denial of diversion on this ground alone is improper, pointing out that approval of such unbridled discretion "would be to substantially eliminate the program." *State of Tennessee v. Terry Horn, Sr.,* Court of Criminal Appeals at Knoxville, released April 26, 1979. *See also James H. Beech v. State of Tennessee,* Court of Criminal Appeals at Nashville, released July 23, 1979, in which the court held "that the nature of and the circumstances surrounding the offense could not and would not of itself be sufficient to deny diversion," noting that "[i]f that were the case, all offenses within the framework of diversion could be denied on that basis alone." *Beech, supra,* at 3–4.

■ The trial court was correct in determining that the standards to be applied in diversion cases are substantially similar to those utilized in deciding whether to grant a suspended sentence. *Pace, supra,* at 864; *Beech, supra,* at 4–5. But it is also true that the nature of the offense alone has been held to be an insufficient basis for the denial of probation, where the legislature has otherwise determined that probation should be available to one convicted of that offense. *See, e. g. Mattino v. State,* 539 S.W.2d 824, 828–29 (Tenn.Cr.App.1976), cited in *Moten v. State,* 559 S.W.2d 770, 772–73 (Tenn.1977); *Franks v. State,* 543 S.W.2d 613, 615–16 (Tenn.Cr.App.1976). Thus the law developed in the area of probation has been paralleled by case law interpreting Tennessee's diversion statute.

■ Nor are we persuaded that the legislature intended to exempt D.U.I. cases from the operation of the diversion statute, merely because there is a recidivist provision applicable to subsequent D.U.I. convictions. Such reasoning would preclude utilization of diversion for many misdemeanors and for every felony subject to inclusion in an habitual criminal indictment. See T.C.A. § 40–2801. Clearly it is for the legislature to determine which charges should bar the participation of an accused in a pre–trial diversion program, and which should not. The trial court thus infringed upon the legislative prerogative by ruling that diversion can never be ordered in a D.U.I. case.

Deterrence obviously has little or no relevance in the pre–trial diversion setting. By deliberate design, invocation of the diversion statute avoids the consequences of a public prosecution and conviction, and thus any "deterrent effect" on others in the community is intentionally minimized or eliminated. The "deterrent value" to the individual defendant comes as the result of the program itself, which should be devised to encourage the defendant's rehabilitation, where necessary, and to ensure that he or she will not be the subject of criminal charges in the future. As noted above, it has already been conceded by the prosecution and explicitly found in the court below

that the defendant in this case meets all the statutory criteria for pretrial diversion.

Finally, we note that the record fails to show any indication of violence connected with the offense for which the defendant was indicted. While it is true that *some* D.U.I. offenders cause property damage or personal injury, this one did not. Under existing law, the defendant has the opportunity to enter a program of up to two years duration, designed to deal with whatever drinking problem he may have; he may also be subjected to conditions laid down by the court concerning his driving and other behavior. Thus, the diversion statute creates a potential for rehabilitation far greater than the rehabilitative potential of the minimal incarceration usually imposed for first offense D.U.I. As two members of our Supreme Court noted in their concurrence in *Pace, supra*:

> The self–evident purpose of pre–trial diversion is to spare appropriately selected first offenders the stigma, embarrassment and expense of trial and the collateral consequences of a criminal conviction. The result contemplated is the restoration of successful divertees to useful and productive citizenship. This is a legitimate and praise–worthy objective and one that has now become the public policy of the State. 566 S.W.2d at 868 (Henry, C. J., and Fones, J., concurring).

For the reasons set out above, the order of the trial court is reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

DWYER and CORNELIUS, JJ., concur.