the debts attributable to Howard Manufacturing Co.

### III.

We affirm the trial court's judgment as modified herein and remand the case for further proceedings consistent with this opinion. The parties or their sureties shall pay the costs of this appeal in equal proportions for which execution, if necessary, may issue.

CANTRELL and FRANKS, JJ., concur.

**STATE of Tennessee, Appellee,**

v.

**Jackie SPEARS, Jr., Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

May 10, 1989.

Russell T. Perkins, Ronald W. McNutt, Williams & Dinkins, Nashville, for appellant.

W.J. Michael Cody, Atty. Gen., Nashville, James W. Thompson, Asst. Atty. Gen., Jerry Woodall, Dist. Atty. Gen., R. Leigh Grinalds, Asst. Dist. Atty. Gen., Jackson, for appellee.

### OPINION

SCOTT, Judge.

The appellant was indicted for one count of assault and battery upon two police officers. He sought pre-trial diversion. The District Attorney General by undated letter informed his counsel that pre-trial diversion was denied for six reasons. Certiorari was not sought before the Circuit Judge in accordance with T.C.A. § 40–15–105(b)(3). The case went to trial and resulted in a mistrial because the jury was unable to agree.

Subsequently, the appellant again sought pre-trial diversion and it was again denied by the District Attorney General for the same reasons set forth in his previous letter. The appellant then filed his petition for a writ of certiorari, asking the trial judge to direct his placement on pre-trial diversion. The trial judge entered an order dismissing the petition and declined to reach the merits of the petition because the petition was not filed "before trial."

On appeal the appellant has presented one issue, whether the trial judge erred by holding that he was precluded from having his pre-trial diversion denial reviewed after he had been tried, but a mistrial resulted.

Prior to 1975 there was no formal pre-trial diversion procedure in Tennessee. District Attorneys General with approval of

the courts frequently placed cases on the "retired docket" with the idea that the case could be reactivated in the event the defendant's future conduct warranted it. Of course, this was seldom done and it was a loose procedure at best.

On June 9, 1975, the Governor approved Chapter 352 of the Public Acts of 1975, which created a program of pre-trial diversion for the State of Tennessee.[1] The statute provides for the suspension of prosecution and the execution of a "memorandum of understanding" when the defendant is charged with certain misdemeanors or felonies and meets other statutory criteria. T.C.A. § 40–15–105(a). The statute authorizes the suspension of prosecution for a specified period not exceeding two years from the date the memorandum of understanding is filed. *Id.* The memorandum of understanding must be approved by the trial court before it shall be of any force and effect. Upon its being filed with the trial court, a defendant who is in custody may be released either on bond or on his "promise to appear" if the suspension of prosecution is terminated and there is a "trial on the charge." T.C.A. § 40–15–105(b)(1).

In the event the District Attorney General has refused to enter into a memorandum of understanding, the defendant has the right to petition for a writ of certiorari to the trial court for an abuse of prosecutorial discretion. If the trial court finds that the prosecutor has abused his discretion in failing to divert, the trial court may order the prosecuting attorney to place the defendant in a diversion status on such terms as the trial court may order. T.C.A. § 40–15–105(b)(3).

Thus, it is clear that the pre-trial diversion statute envisions the application for this largesse of the law to be accomplished "pre-trial." Indeed, the name of the procedure is "pre-trial" diversion. This Court has repeatedly held that failure to seek an interlocutory appeal after the trial court

denied pre-trial diversion and proceeding to trial amounted to a waiver of the pre-trial diversion issue. *State v. Montgomery*, 623 S.W.2d 116, 118 (Tenn.Crim.App.1981), *State v. McDuff*, 691 S.W.2d 569, 570 (Tenn.Crim.App.1984), *State v. Wilson*, 713 S.W.2d 85, 87 (Tenn.Crim.App.1986).

Neither the state nor the appellant has cited us to any published or unpublished case in which pretrial diversion was sought after a mistrial was declared. Thus, this is apparently a case of first impression under our pre-trial diversion statute.

The appellant vigorously argues, citing cases dealing with double jeopardy, that a mistrial is the same as no trial at all, and that the appellant is, therefore, in the same position now as he was before his trial commenced. The state counters with citations to *State v. McDuff*, 691 S.W.2d 569, 570 (Tenn.Crim.App.1984), and *State v. Wilson*, 713 S.W.2d 85, 87 (Tenn.Crim.App. 1986), in which this Court has held that pre-trial diversion issues were waived by failure to seek appellate review of diversion denials until after conviction. That, of course, is not the situation here.

In *Pace v. State*, 566 S.W.2d 861, 868 (Tenn.1978), the late Chief Justice Joe W. Henry wrote in his concurring opinion:

> The self-evident purpose of pre-trial diversion is to spare appropriately selected first offenders the stigma, embarrassment and expense of trial and the collateral consequences of a criminal conviction. The result contemplated is the restoration of successful divertees to useful and productive citizenship. This is a legitimate and praiseworthy objective and one that has now become the public policy of the State.

As the appellant points out in his brief, the policies underlying pre-trial diversion may be even stronger in cases of retrials because the reprosecution may impose a greater strain on a worthy applicant, in terms of the monetary costs, as well as the

---

1. The program met with some resistance from some District Attorneys General and some trial courts until our Supreme Court made it clear that the General Assembly clearly had the power to create such a program, *Pace v. State*, 566

S.W.2d 861, 864 (Tenn.1978), and that the statutory scheme has *statewide* application. *Dearborne v. State*, 575 S.W.2d 259, 262 (Tenn.1978). (emphasis in original)

emotional and physical costs of again going to trial. Furthermore, we can envision situations in which the prosecution might actually encourage applications for pre-trial diversion after a mistrial has been declared following an unsuccessful effort to convince a jury that the defendant was guilty.

A mistrial is defined as an "erroneous, invalid or nugatory trial" due to some error in the proceedings. The term is loosely employed to denote any trial not resulting in a lawful verdict. In legal effect, it is "equivalent to no trial at all." 58 C.J.S. (Mistrial) 833–834.

In this case, a mistrial having been declared, the state and the appellant are back where they began. In that situation, there is no reason why the appellant cannot again seek pre-trial diversion. The Attorney General can consider the request again (as he did in this case) and the appellant can petition the Court for certiorari, in the event diversion is denied. Diversion having been again denied, the judgment of dismissal of the petition for certiorari is reversed and this cause is remanded to the trial court with directions to hear the petition.

DAUGHTREY and WADE, JJ., concur.