IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 23, 2023, at Knoxville

**STATE OF TENNESSEE v. DAVID PARR**

**Appeal from the Circuit Court for Stewart County
Nos. 2020-CR-18, 2020-CR-49     David P. Wolfe, Judge**

―――――――――――

**No. M2022-00868-CCA-R3-CD**

―――――――――――

The defendant, David Parr, appeals the Stewart County Circuit Court's imposition of a fully-incarcerative sentence for his guilty-pleaded convictions of possession of methamphetamine and fentanyl with intent to sell or deliver, asking this court to remand to the trial court for consideration of Community Corrections under Code section 40-36-106(2)(c). Because the superseding indictments violated the principles of double jeopardy and because the trial court lacked jurisdiction to hold the plea submission hearing, the judgments entered on the superseding indictments are void, and we dismiss the appeal.

**Tenn. R. App. P. 3; Appeal Dismissed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and J. ROSS DYER, JJ., joined.

Edward DeWerff (at trial) and Gregory D. Smith (on appeal), Clarksville, Tennessee, for the appellant, David Parr.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Rinard, Assistant Attorney General; Ray Crouch, District Attorney General; and Josh Turnbow, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In March 2020, the defendant and co-defendant Jessica L. Black were charged by indictment in case 2020-CR-18 with one count each of possession of .5 grams or more of methamphetamine with intent to sell or deliver (Count 1), possession of not less than one-half ounce nor more than 10 pounds of marijuana with intent to sell or deliver (Count 2), possession of drug paraphernalia (Count 3), possession of Gabapentin with intent to sell or deliver (Count 4), and possession of Alprazolam with intent to sell or deliver (Count 5). In May 2020, the defendant was charged by presentment in case 2020-

CR-49 with two counts of selling heroin, a Schedule I controlled substance, in a drug free zone (Counts 1 and 3) and two counts of possession of drug paraphernalia (Counts 2 and 4).

The defendant entered into a plea agreement with the State, in which he agreed to plead guilty as a Range II offender to two amended counts of the selling of a Schedule II controlled substance in Counts 1 and 3 in case 2020-CR-49 in exchange for the State's dismissing the remaining charges in case 2020-CR-49 and all charges in case 2020-CR-18. Pursuant to the plea agreement, the sentences for the two convictions would run concurrently to each other, but the trial court would otherwise set the length of sentence and manner of service. At the July 12, 2021 plea submission hearing, in front of Judge Larry Wallace, the defendant pleaded guilty to two counts of selling a Schedule II controlled substance, resulting in two Class B felony convictions. The State explained that the defendant was pleading guilty to amended charges of selling of a Schedule II controlled substance because the Tennessee Bureau of Investigation laboratory's testing of the substance indicated that it was fentanyl instead of heroin. The State provided the following recitation of facts to support the defendant's convictions: "[O]n January 24th and January 20th of 2020, [the defendant] sold fentanyl to a confidential informant in Stewart County." At the conclusion of the hearing, the trial court stated, "The [c]ourt accepts the . . . plea." The court set a sentencing hearing for August 23, 2021. Plea agreement forms reflecting this agreement were signed by Judge Wallace on July 12, 2021. On July 28, 2021, Judge Wallace entered judgments indicating that all counts in case 2020-CR-18 were nolle prosequied.

On August 13, 2021, Judge Wallace entered an order recusing himself from both cases and setting them for a status hearing. The order did not attempt to dispose of the defendant's plea or convictions. The sentencing hearing scheduled for August 23, 2021 did not occur. Judge David Wolfe took over the case and held a status hearing on November 8, 2021. In that hearing, the State asked whether the defendant "need[ed] to reenter that . . . plea?" The court responded, "I am of the opinion that he does need to reenter a[] . . . plea in front of the [j]udge who is going to sentence him." The court continued, "I understand it's redundant, but I think it would be better for the technical record so that there are no issues that are raised." The court scheduled a plea submission hearing for November 23, 2021. The plea submission hearing did not occur until March 21, 2022, but the record does not indicate when or why the hearing was continued.

In January 2022, the State obtained superseding indictments in both cases. The superseding indictment in case 2020-CR-18 was identical to the original indictment other than that it omitted the co-defendant: the defendant was charged with one count each of possession with intent to sell or deliver .5 grams or more of methamphetamine,

possession with intent to sell or deliver not less than one-half ounce nor more than 10 pounds of marijuana, possession with intent to sell or deliver Gabapentin, possession with intent to sell or deliver Alprazolam, and possession of drug paraphernalia. The superseding presentment in case 2020-CR-49, charged the defendant with two counts of selling fentanyl, a Schedule II controlled substance, in a drug free zone (Counts 1 and 3), and two counts of possession of drug paraphernalia (Counts 2 and 4).

The trial court held a plea submission hearing on the superseding indictments on March 21, 2022, at which hearing the defendant pleaded guilty as a Range II offender to one count of possession with intent to sell or deliver .5 grams or more of methamphetamine in case 2020-CR-18 and one count of possession with intent to sell or deliver fentanyl in case 2020-CR-49, resulting in one Class B felony conviction and one Class C felony conviction. *See* T.C.A. § 39-17-417(c)(1), (2)(A) (2018). Plea agreement forms dated April 8, 2022, indicate that the defendant agreed to plead guilty to one count of possession with intent to sell or deliver .5 grams or more of methamphetamine in case 2020-CR-18 with the remaining charges in that case to be dismissed and one count of possession with intent to sell or deliver fentanyl in case 2020-CR-49, with the remaining charges in that case to be dismissed. Both plea agreement forms were signed by Judge Wolfe. At the hearing, the State provided the following recitation of facts:

> [I]n 2020-CR-49, on January 24th of 2020[, the defendant] sold .87 grams of fentanyl to a confidential informant, and then in 2020-CR-18, on February the 4th, 2020, there was a search warrant conducted at [the defendant's] residence and there was 28.99 grams of methamphetamine found in [the defendant's] room.

The trial court held a sentencing hearing on May 16, 2022, at which Dickson County Sheriff's Office Detective Chris Freeze testified that in investigating the defendant for the distribution of narcotics, he arranged for a confidential informant to make a controlled buy of fentanyl.[1] Based on the successful controlled buy, Detective Freeze obtained a search warrant for the defendant's residence. Upon execution of the search warrant, officers recovered "a great big bag of suspected narcotics that was just laying like on a dresser," "a bunch of paraphernalia," and "a significant amount" of methamphetamine. He acknowledged that some of the paraphernalia "could have been there for use as well."

The State exhibited to the hearing a presentence investigation report and

---

[1] Officer Freeze explained that fentanyl and heroin were considered interchangeable and that "we really never know what we are getting. We may ask to purchase heroin and get fentanyl, we may sometimes get heroin."

certified copies of judgments for three prior convictions of aggravated burglary, burglary, and possession of a firearm while a convicted felon.

Margaret Gregg testified that she worked as a school teacher and for the Department of Children Services ("DCS"). In her role at DCS, she was "a foster parent mentor" and "facilitate[d] homes for children." She said that the defendant's two children were placed in her home the night of his arrest in this case and had remained in her care for "almost a year." The children were returned to their mother upon her completion of a drug rehabilitation program. She said that while the children were in her care, the defendant "was very active with" them despite being incarcerated and would visit with them by teleconference and telephone approximately twice per week. Ms. Gregg said that after the children were returned to their mother's custody, the defendant continued to check on the children once or twice a week, "want[ing] to know how they're doing in school, . . . wishing them happy birthday, happy holidays."

Julie Utley testified that she worked at Hope Center Ministries, "a long-term drug and alcohol program." She said that the program was 12-months long and that participants could not complete the program sooner even with "good behavior." She said that she had received an application to the program from the defendant and that the defendant qualified for the program in Waverly. Ms. Utley said that the defendant's fiancée successfully completed the program and worked as an intern at the center's location in Paris. She said that even though the defendant had not used drugs during the two years he had been incarcerated, "in jail you are not taught the tools to use to be able not to use." The Hope Center program "give[s] them the tools that they need and put them in situations to where . . . they have what they need when they graduate to be able to say no." She said that she believed the defendant could "[a]bsolutely" benefit from the program and that the program had space for him immediately.

At the conclusion of the evidence, the trial court concluded that the defendant was ineligible for Community Corrections because he was facing a minimum 12-year sentence and because Community Corrections was available only to those who were eligible for probation with a sentence of 10 years or less. The court found that the defendant "has a long history of criminal conduct," that the sale of drugs "is a serious offense" that "can't be depreciated," and that the defendant "has not been successful in serving probation in the past." The court noted that the sentencing statutes require the court to consider a defendant's potential for rehabilitation and encourage the use of non-incarcerative sentences but concluded that it could not consider an alternative sentence for the defendant because the length of his sentence would exceed the maximum sentence allowed to be considered for probation. The trial court stated, "So under the circumstances, with what I just read and the case law that I have looked at, indicates to me that there is no eligibility

for probation, even probation through Community Corrections for someone . . . whose sentence will be 12 years." In denying Community Corrections, the trial court said, "Because of the simple fact that I have no option to grant him the probation that he wants and put him on Community Corrections, I deny his request to be placed on Community Corrections . . . ." The trial court sentenced the defendant as a Range II offender to an effective sentence of 15 years' incarceration. After imposing the sentence, the court told the defendant, "It seems like you have finally gotten your life together. I wish that I had options that I could give you, but I can't. And I have to follow the law and I have to give you the sentence that I think is appropriate."

In this timely appeal, the defendant argues that the trial court erred by failing to consider his eligibility for Community Corrections under the "special exceptions" provision. The State argues that the trial court did not abuse its discretion in imposing the fully-incarcerative sentence.

Because the judgments appealed by the defendant are those issued by the trial court after the second plea submission hearing, this court ordered supplemental briefing by the parties to address whether the State's obtaining superseding indictments after the defendant pleaded guilty on July 12, 2021, violated principles of double jeopardy and whether the trial court had jurisdiction to hold a second plea submission hearing.

In supplemental briefing, the defendant argues that the issuance of a superseding indictment in case 2020-CR-18 violated the principles of double jeopardy and that the trial court lacked jurisdiction to hold a second plea submission hearing in that case because the entry of nolle prosequi judgments by the trial court terminated that case. He argues that the trial court had jurisdiction to hold a second plea submission hearing in case 2020-CR-49 because no final judgments were entered in that case. The State contends that the trial court's initial acceptance of the defendant's plea was conditional, that jeopardy never attached in either case, and that the trial court had jurisdiction to hold a second plea hearing.

When a defendant pleads guilty, jeopardy attaches when the trial court "unconditionally accept[s]" the guilty plea. *See State v. Todd*, 654 S.W.2d 379, 383 (Tenn. 1983) ("[J]eopardy does not attach at a hearing on a guilty plea until the plea is unconditionally accepted." (citations omitted)). However, "[u]ntil a final judgment is entered a court is free to reject the plea and plea agreement." *Id*. (citing *United States v. Sanchez*, 609 F.2d 761, 763 (5th Cir. 1980)). Furthermore, "once plea agreements are approved by the trial court, they become binding and enforceable contracts," and the trial court lacks authority to modify the agreement. *James R. Blue v. State*, No. M2002-00383-CCA-R3-PC, 2003 WL 1715745, at *7 (Tenn. Crim. App., Nashville, Apr. 1, 2003) (citing

*State v. Howington*, 907 S.W.2d 403, 407 (Tenn. 1995)). Here, the trial court unconditionally accepted the defendant's guilty plea on July 12, 2021, as evidenced by the court's entry of final judgments of the nolle prosequied counts in case 2020-CR-18, and jeopardy attached as to both cases.

Generally, "a trial court's judgment becomes final thirty days after its entry unless a timely notice of appeal or a specified post-trial motion is filed." *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996) (citing Tenn. R. App. P. 4(a), (c); *State v. Moore*, 814 S.W.2d 381, 382 (Tenn. Crim. App. 1991)); *State v. Green*, 106 S.W.2d 646, 650 (Tenn. 2003) ("We hold that a judgment of conviction upon a guilty plea becomes a final judgment thirty days after entry."). After a judgment becomes final, a trial court loses jurisdiction to modify the judgment, *State v. Allen*, 593 S.W.3d 145, 154 (Tenn. 2020) ("Once an order becomes final, a trial court loses jurisdiction and generally has no power to modify or amend the order" (citations omitted)); *Green*, 106 S.W.3d at 648-49 ("Generally, a trial court has no power to amend its judgment once the judgment becomes final . . . ." (citations omitted)), with the limited exception of correcting clerical mistakes, *see* Tenn. R. Crim. P. 36. "It is well-settled that a judgment beyond the jurisdiction of a court is void." *Pendergrass*, 937 S.W.2d at 837 (citing *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955)). "[J]urisdiction to modify a final judgment cannot be grounded upon waiver or agreement by the parties." *Moore*, 814 S.W.2d at 383.

Here, because the first judgments in case number 2020-CR-18 disposing of all five counts as nolle prosequied, were entered on July 28, 2021, they became final on August 25, 2021. Judge Wallace's order of recusal of August 13, 2021, set the case for a status hearing but did not attempt to dispose of the judgments or permit the defendant to withdraw his guilty pleas. Consequently, the trial court was without jurisdiction to enter subsequent judgments in case 2020-CR-18 after the second plea submission hearing, and those judgments are void because jeopardy had attached to the July 21, 2021 judgments, and although the judgments resulted from the State's nolle prosequi dismissal, the dismissal was with prejudice.

With respect to the nolle presequied charges in case 2020-CR-18, the law is well-settled that a nolle prosequied charge "leaves the prosecution just as though no such count had ever been inserted in the indictment," *Dealy v. United States*, 152 U.S. 539, 542 (1894), and "does not bar further prosecution *under a new indictment*," *Pace v. State*, 566 S.W.2d 861, 867 n.4 (Tenn. 1978) (Henry, C.J., concurring) (emphasis added) (citing *State ex rel. Hobbs v. Murrell*, 93 S.W.2d 628 (Tenn. 1936)). Because a "superseding indictment is an indictment obtained without the dismissal of a prior indictment," *State v. Harris*, 33 S.W.3d 767, 771 (Tenn. 2000), a superseding indictment is not the proper mechanism by which to prosecute a defendant on charges that have been nolle prosequied.

Furthermore, although "[t]he power to seek a superseding indictment lies within th[e] broad discretion of the State," *id.*, the State may not obtain a superseding indictment after jeopardy has attached, *State v. Batey*, No. M2017-02440-CCA-R3-CD, 2019 WL 6817059 (Tenn. Crim. App., Nashville, Dec. 13, 2019) ("*Where there has been no jeopardy on the first indictment*, a grand jury may return a new indictment against an accused even though another indictment is pending. . . ." (emphasis and alteration in *Batey*) (quoting *Harris*, 33 S.W.3d at 771)); *see also Murrell*, 93 S.W.2d at 630 (stating that a nolle prosequi "is not a bar to a subsequent prosecution, unless it shall be entered after the defendant has been put to his trial upon a valid indictment before a jury duly sworn and impaneled" (quoting *Scheibler v. Steinburg*, 167 S.W. 866, 866 (Tenn. 1914) *overruled on other grounds by Mynatt v. Nat'l Treasury Emps. Union, Chapter 39*, 669 S.W.3d 741 (Tenn. 2023)); *c.f.* Tenn. R. Crim. P. 7(b) ("Without the defendant's consent and before jeopardy attaches, the court may permit . . . an amendment [to the indictment] if no additional or different offense is charged and no substantial right of the defendant is prejudiced."). After jeopardy has attached, however, the entry of "a nolle prosequi would terminate the prosecution, as the defendant would have been in jeopardy." *Scheibler*, 167 S.W. at 866 (citing *State v. Fleming*, 26 Tenn. (7 Humph.) 152, 154 (1846)). Jeopardy attached when, as noted above, the trial court accepted the defendant's guilty plea on July 21, 2021. In other words, the dismissal via nolle prosequi after jeopardy attached is with prejudice in case 2020-CR-18. Furthermore, although no judgments were initially entered in case 2020-CR-49, the unconditional acceptance of the pleas in that indictment with the attendant attachment of jeopardy barred new charges via the superseding indictment.

Consequently, the superseding indictments in cases 2020-CR-18 and 2020-CR-49 violated the principles of double jeopardy, and the trial court was without jurisdiction to hear them. Accordingly, the superseding indictments are void, the trial court lacked jurisdiction to hold a plea submission hearing on those indictments, the defendant's second guilty plea was void, and the judgments entered by Judge Wolfe after the second plea submission hearing are void.

As the defendant's case stands, he pleaded guilty to two counts of selling a Schedule II controlled substance in case 2020-CR-49, and the remaining counts in that case and all counts in case 2020-CR-18 have been dismissed. He has not yet been sentenced on that plea. The appeal is dismissed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

_____
JAMES CURWOOD WITT, JR., JUDGE