IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 14, 2003 Session

## STATE OF TENNESSEE v. SAMUEL L. GIDDENS

**Direct Appeal from the Circuit Court for Williamson County**
**Nos. II-1100-367-B & II-1299-415-A     Timothy L. Easter, Judge**

---

**No. M2002-00163-CCA-R3-CD - Filed April 4, 2003**

---

Following a jury trial, the Defendant, Samuel L. Giddens, was convicted of facilitation of possession of heroin with the intent to sell or deliver and possession of cocaine with the intent to sell or deliver. In this appeal as of right, the Defendant raises the following four issues: (1) whether the trial court erred by allowing law enforcement officers to testify regarding factual indications that a person possesses drugs with the intent to sell, rather than for personal use; (2) whether the trial court erred by admitting testimony regarding prior drug transactions conducted by the Defendant; (3) whether the evidence is sufficient to sustain his two convictions; and (4) whether he was entitled to a mistrial due to a statement made by the prosecutor during closing argument. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Ernest W. Williams and Anna E. Freeman, Franklin, Tennessee, for the appellant, Samuel L. Giddens.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Ron Davis, District Attorney General; and Lee E. Dryer, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Defendant was convicted by a jury of facilitation of possession of heroin, a Schedule I controlled substance, with the intent to sell or deliver, which is a Class C felony, and possession with the intent to sell or deliver cocaine, a Schedule II controlled substance, which is a Class C felony.

The evidence put forth by the State at trial established that, on October 27, 1999, Agent Marty Roberts of the Drug Enforcement Administration received a telephone call from Frank Collier, a heroin addict, asking for a meeting. Agent Roberts arranged to meet Mr. Collier at the Marriott Hotel in Cool Springs, near Franklin, Tennessee. Agent Roberts and Joey Kimble, the director of the 21st Judicial District Drug Task Force, interviewed Mr. Collier at the hotel. They arranged for Mr. Collier to make several recorded telephone conversations with his supplier, Ronald Jasmin, from whom he was to buy an ounce of heroin. Law enforcement officers set up surveillance in and around the hotel. Agent Roberts remained in the hotel room with Mr. Collier; DEA Agents Greg Peckinpaugh and Tim Bailey conducted surveillance in the hotel lobby. When Mr. Jasmin and the Defendant arrived at the hotel, Agents Peckinpaugh and Bailey followed them to Mr. Collier's room. When Mr. Jasmin and the Defendant knocked on Mr. Collier's door, Agents Peckinpaugh and Bailey approached them in the hallway and identified themselves as DEA agents. Both Mr. Jasmin and the Defendant then put their hands into their pant pockets, and Agents Peckinpaugh and Bailey restrained the men. Four bags of a powder substance were found on Mr. Jasmin, and one bag of a powder substance was found on the Defendant. Glenn Everett, a forensic scientist with the Tennessee Bureau of Investigation, testified that the substance taken from the Defendant weighed thirteen grams and tested positive for cocaine. The substances taken from Mr. Jasmin weighed 24.6 grams and 4.3 grams and tested positive for heroin and cocaine, respectively.

The Defendant first argues that the trial court erred by allowing law enforcement officers to testify regarding indications that a person possesses drugs with the intent to sell, rather than for personal use. Specifically, the Defendant asserts that drug task force agent Tim Haun's testimony regarding the packaging of drugs was based upon inadmissible hearsay. Agent Haun testified that, throughout the course of his training as a law enforcement officer, he was instructed in how to differentiate between a drug user and a drug dealer. He stated that the manner in which the drugs are packaged is indicative of how the possessor of the drugs intends to use them. Drug dealers usually package drugs for resale in the "corners of baggies tied off with a knot." Also, he testified that drug dealers often will have several of these individual bags. Furthermore, drug dealers do not necessarily carry the drug paraphernalia that users often do, and mere drug users may not have the cellular phones or pagers that are so vital to a drug dealer. Finally, the amount of the drug found on a person is suggestive of whether the person has the drug to sell or for personal use.

The Defendant contends that Agent Haun was simply testifying as to what he was told by his instructors; therefore his testimony should have been excluded as hearsay. Initially, we disagree with the Defendant in the characterization of Agent Haun's testimony. While Agent Haun did explain that, during his training, he had been instructed concerning how to differentiate a drug dealer from a drug user, he also explained that, based on his experiences in the field, there are common differences between users and sellers. His testimony was based not solely on the training he had received but also on his actual experience in investigating and arresting drug offenders. Following Agent Haun's testimony, the trial court instructed the jury regarding expert testimony as set forth in Tennessee Rule of Evidence 702. However, Agent Haun's testimony is equally admissible under Tennessee Rule of Evidence 701, which states:

> If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are
> (1) rationally based on the perception of the witness and
> (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

To the extent that one could characterize Agent Haun's testimony in this case as "opinion or inferences," we believe it fell within the parameter of this Rule.

The Defendant also argues that the testimony of Agent Haun and Agent Peckinpaugh regarding specific characteristics of a drug seller as opposed to a drug user presented a drug profile.[1] As we stated above, Agent Haun testified that the packaging of the drugs and the quantity of the drug often indicate that a person intends to sell, rather than use, a drug. Agent Peckinpaugh's testimony is very similar. He also stated that the quantity and method of packaging, as well as the lack of drug paraphernalia and presence of cellular telephones or pagers, indicate that a person is a drug seller. In support of his argument that this testimony constitutes improper profiling, the Defendant cites the concurring opinion of Judge Tipton in State v. William Aubrey Trotter, Jr., No. 01C01-9701-CR-00019, 1998 WL 75423, at *5 (Tenn. Crim. App. at Nashville, Feb. 24, 1998). In that case, one officer testified that he charged the defendant with possession for resale rather than simple possession based upon the defendant's appearance, the amount of drugs found on the defendant, the amount of cash the defendant was carrying, and the fact that the defendant was not carrying any drug paraphernalia. A second officer explained what factors distinguish a possession for resale from a simple possession. He testified, "Usually, the simple possession is usually they always have a crack pipe with them, and the majority of the time, one small rock of crack cocaine, and the possession for resale are obviously several rocks of cocaine and…the amount of money is an indicator." Id. at *2. He also testified that drug sellers can often be found "standing on the corner [in an area known to have a high volume of drug traffic], flagging cars down, going to cars, leaving cars, standing there with really no objective, not, don't live there, not visiting anyone there." Id. In his concurring opinion, Judge Tipton opined that the officers' testimony regarding specific characteristics of a drug seller as opposed to a drug user was opinion evidence that essentially presented a profile. However, the majority in Trotter did not find that the testimony of officers presented a drug profile.

Consistent with the majority opinion in Trotter, we conclude that the testimony of the agents in this case did not create a drug profile. Based upon what they had perceived during their experience as narcotics officers, the agents testified to the factors that commonly distinguish one who possesses drugs for the purpose of resale from one who possesses drugs for personal use. They did not testify that the Defendant was guilty as charged. Therefore, this issue is without merit.

---

[1] We note that the record reflects that four law enforcement officers - Agent Tim Haun, Agent Greg Peckinpaugh, Officer Marty Roberts, and Agent Joey Kimble - testified to indications that a person is a drug seller rather than a drug user.

The second issue raised by the Defendant is whether the trial court erred by admitting the testimony of Ronald Jasmin regarding prior drug transactions conducted by the Defendant which Mr. Jasmin had witnessed. First the Defendant argues that the trial court should not have allowed Mr. Jasmin to testify because his testimony was unduly prejudicial, and the only way for the Defendant to rebut it would be for him to take the stand. Therefore, the Defendant presents the creative argument that, by allowing Mr. Jasmin to testify, the trial court compelled the Defendant to give evidence against himself, lest a presumption of guilt be created against him. The sole case cited by the Defendant in support of this argument is Staples v. State, 14 S.W. 603 (Tenn. 1890). However, in that case, the prosecutor argued to the jury that the defendant had not testified. The prosecutor further described for the jury what the defendant would have said if he had testified. The instant case is obviously distinguishable. The attorney for the State did not comment on the Defendant's decision not to testify, and there has been no showing that the Defendant's decision to not testify created a presumption of guilt against him. Therefore, this portion of the Defendant's argument must fail.

The Defendant also contends that the trial court should have excluded the testimony of Mr. Jasmin because under Tennessee Rule of Evidence 404(b), "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." As the trial court correctly noted, "[i]t may, however, be admissible for other purposes." Id. One such purpose is to show the accused's intent. See State v. Parton, 694 S.W.2d 299, 302 (Tenn. 1985). The trial court ruled that the evidence of the Defendant's prior participation in drug sales was admissible to show that the Defendant did intend to sell the drugs that he possessed on October 27, 1999. This Court has held in several cases that evidence of prior drug sales was admissible to prove a defendant's intent to sell drugs. See, e.g., State v. Little, 854 S.W.2d 643, 649 (Tenn. Crim. App. 1992) (holding that evidence of the defendant's prior drug transactions was admissible to show intent to sell drugs and rebut the defendant's contention that he was "a victim of circumstance"); State v. Bernard Jerome Jones, No. M2000-00018-CCA-R3-CD, 2000 WL 1562864, at *3 (Tenn. Crim. App. at Nashville, Oct. 20, 2000) (holding that regardless of the admissibility of defendant's prior convictions for selling drugs for impeachment purposes, convictions were admissible to show intent to sell drugs); State v. Johnny Wayne Tillery, No. 01C01-9506-CC-00182, 1998 WL 148326, at *1 (Tenn. Crim. App., at Nashville, Mar. 30, 1998) (holding that probative value of evidence of defendant's involvement in drug transactions outweighed prejudice and pattern of prior drug sales was admissible to show defendant's intent to possess drugs with the intent to sell). In this case, the Defendant maintained throughout the trial that he did not intend to sell drugs. In his opening statement to the jury, defense counsel said, "It is highly disputed that [the Defendant] intended to deliver or sell heroin and cocaine…If you believe all of the State's proof, I submit to you that what [the Defendant] is guilty of is no more than simple possession." The testimony of Ronald Jasmin that he had witnessed the Defendant selling drugs on several prior occasions was relevant to show that the Defendant was more than a mere drug user. The evidence of prior drug sales indicated an intent on the part of the Defendant to sell the drugs he possessed. It was not error for the trial court to admit the testimony of Mr. Jasmin, and this issue is without merit.

The Defendant next argues that the evidence presented at trial is insufficient to sustain his convictions for possession of cocaine with the intent to sell and facilitation of possession of heroin with the intent to sell. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

The jury convicted the Defendant of possessing cocaine with the intent to sell or deliver. At trial, Agent Peckinpaugh testified that, when he apprehended the Defendant in the hotel hallway, he removed the Defendant's hand from his pocket and handcuffed him. Agent Peckinpaugh then felt inside the Defendant's pocket and found a plastic bag that contained a substance that appeared to be cocaine. Glenn Everett testified that the substance recovered from the Defendant did test positive for cocaine and weighed thirteen grams.[2] Clearly the proof is sufficient to show that the Defendant possessed a substance containing cocaine, and the Defendant concedes as much in his brief.

The question, then, is whether the proof at trial was sufficient to establish that the Defendant possessed the cocaine with the intent to sell it. Ronald Jasmin testified that the Defendant was with him when Frank Collier called to order heroin. The Defendant went with Mr. Jasmin to retrieve heroin from Mr. Jasmin's supplier. Furthermore, Mr. Jasmin testified that the Defendant gave him three bags containing a small amount of cocaine to sell to Mr. Collier, in addition to the one large

---

[2]Tennessee Code Annotated section 39-17-417(c)(1) provides that possession of over .5 grams of cocaine with the intent to sell or deliver is a Class B felony. However, the indictment failed to allege that the amount of the controlled substance found in the possession of the Defendant was .5 grams or more. Therefore, in accordance with State v. Hilliard, 906 S.W.2d 466, 469-70 (Tenn. Crim. App. 1995), the trial court reduced the Defendant's conviction to a Class C felony at the sentencing hearing.

bag of cocaine that the Defendant was carrying. Although Mr. Collier did not request cocaine, Mr. Jasmin stated that he almost always bought whatever was brought to him. When the police officers placed the Defendant under arrest and searched him, they found the bag containing thirteen grams of cocaine, a cellular telephone, and an electronic pager. The Defendant was carrying no drug paraphernalia. Several officers testified that these factors, especially the large amount of cocaine found on the Defendant, are consistent with common characteristics of people who possess drugs for resale. "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Tenn. Code Ann. § 39-17-419. We believe that this evidence is sufficient to entitle the jury to conclude beyond a reasonable doubt that the Defendant possessed the thirteen grams of cocaine with the intent to sell or deliver.

The jury also convicted the Defendant of facilitation of possession of heroin with the intent to sell or deliver. Ronald Jasmin admitted that he took a large amount of heroin to the hotel room of Frank Collier for the purpose of selling it to Mr. Collier. Therefore, we focus on whether the Defendant facilitated Mr. Jasmin's possession of the heroin with the intent to sell or deliver. Facilitation occurs when, "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a). Mr. Jasmin testified that the Defendant was present during every stage of the attempted drug sale to Frank Collier: he was present when Mr. Jasmin received the call from Mr. Collier requesting heroin; he was present when Mr. Jasmin went to his supplier to obtain heroin; he was present when Mr. Jasmin cut the heroin with sugar; he accompanied Mr. Jasmin to Mr. Collier's hotel; and he and Mr. Jasmin both knocked on Mr. Collier's door. Finally, Mr. Jasmin testified that the Defendant gave him three small bags containing cocaine for him to try to sell to Mr. Collier in addition to the requested heroin. These facts support the jury's verdict finding the Defendant guilty of facilitation of possession of heroin with the intent to sell. This issue is without merit.

The last issue raised by the Defendant is that he was entitled to a mistrial due to a statement made by the prosecutor during closing argument. During the State's closing argument to the jury, the prosecuting attorney stated, "Two potential witnesses in this case are now dead. They were both in the drug business. What does that tell you about the drug business? What does that tell you about what it does to us, to our community?" Upon hearing this utterance by the prosecutor, defense counsel immediately objected and then moved for a mistrial when the prosecutor had concluded his closing argument. In response to defense counsel's objection, the trial court instructed the jury to disregard the comments because there was no evidence in the record to suggest that drugs caused the deaths of the two potential witnesses. The Defendant now contends that the trial court erred in denying his motion for a mistrial. He argues that the prosecutor's statements were so prejudicial that no curative instruction would be sufficient and a that mistrial was necessary.

A trial court has substantial discretionary authority in determining the propriety of final argument. See Coker v. State, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995). Although counsel

is generally given wide latitude, a trial court must restrict any improper commentary. See id. "Arguments must be temperate, predicated on evidence introduced during the trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v. Thornton, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999). However, even if the prosecutor's statements constitute misconduct, whether it amounts to reversible error depends on whether it had a prejudicial effect upon the jury's verdict. See id.

The factors to aid us in making this determination are set forth in Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976). The Judge factors, later adopted by our supreme court in State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984), require this Court to consider the following:

> 1. The conduct complained of[,] viewed in context and in light of the facts and circumstances of the case.
> 2. The curative measures undertaken by the court and the prosecution.
> 3. The intent of the prosecutor in making the improper statement.
> 4. The cumulative effect of the improper conduct and any other errors in the record.
> 5. The relative strength or weakness of the case.

Judge, 539 S.W.2d at 344.

The first Judge factor requires us to consider the prosecutor's comments in context and in light of the facts and circumstances of the case. See Judge, 539 S.W.2d at 344. The State's proof in this case established that the Defendant accompanied Ronald Jasmin to sell heroin to Frank Collier. When he was arrested and searched, police officers found a bag containing thirteen grams of a substance containing cocaine. The Defendant's theory of defense was that he had the cocaine for his personal use and did not intend to sell it. However, Mr. Jasmin testified that he had witnessed the Defendant selling drugs before. Furthermore, law enforcement officers testified that no drug paraphernalia was found on the Defendant. The prosecutor's comment, arguably implying that the two potential witnesses had died as a result of their involvement in the drug business, was not based on any evidence that had been introduced and was not relevant to any of the issues being tried. Therefore, the comment was improper.

Immediately after the State's attorney made the improper statement, the trial court issued a curative instruction to the jury. The trial court instructed the jury to disregard the improper argument because there was no evidence in the record that the deaths of the two potential witnesses was caused by their involvement in the drug business.

The third factor is the prosecutor's intent in making the questioned comment. Here, the prosecutor was apparently intending to demonstrate the threat that the drug trade poses to society, especially when drugs are dealt in the quantity presented in this case. Obviously, the drug business is dangerous, but in illustrating that point, prosecutors must limit their arguments to the evidence introduced during trial.

The fourth factor is the cumulative effect of the improper comment and other errors in the record. In our review of the record, we have found no other errors, and we believe that, in the context of the entire closing argument by the State and the totality of the evidence presented to the jury, the prosecutor's comment had little or no effect on the jury. The trial court immediately instructed the jury to disregard the improper comment; at the close of argument the court instructed that the Defendant was presumed innocent and bore no burden to prove his innocence.

The fifth Judge factor is the relative strength or weakness of the State's case, and we find that the State presented a relatively strong case against the Defendant.

Considering all of the Judge factors, we conclude that the prosecutor's comment was improper, but it does not require reversal. Once again, however, this Court cautions the State against making such gratuitous and improper comments and reminds prosecutors that "'[r]emarks which skirt the edges of impermissible comment are neither desirable nor worth the risk of reversal of what may well be a thoroughly deserved conviction.'" State v. Copeland, 983 S.W.2d 703, 709 (Tenn. Crim. App. 1998) (quoting Taylor v. State, 582 S.W.2d 98, 101 (Tenn. Crim. App. 1979)). The Defendant is not entitled to a new trial on this basis.

Accordingly, the judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE