IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 11, 2005

## TIMOTHY DEWAYNE GARDNER v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Robertson County**
**No. 00-0183    Michael R. Jones, Judge**

---

**No. M2004-00754-CCA-R3-PC - Filed August 8, 2005**

---

The petitioner, Timothy Dewayne Gardner, was convicted by a jury in the Robertson County Circuit Court of possessing over 300 grams of cocaine with intent to sell. The petitioner received a sentence of seventeen years incarceration in the Tennessee Department of Correction. Subsequently, the petitioner filed for post-conviction relief, alleging that he received ineffective assistance of counsel. The post-conviction court denied the petition, and the petitioner now appeals. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Ann M. Kroeger, Springfield, Tennessee, for the appellant, Timothy Dewayne Gardner.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Dent Morriss, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On direct appeal, this court summarized the facts underlying the petitioner's conviction as follows:

> During the summer of 1999, Darryl Terez Smith was the target of a joint undercover drug investigation by the Metropolitan Nashville and Springfield Police Departments. During the investigation, Smith engaged in drug sales to confidential informants in both Davidson and Robertson counties. On July 26, 1999, a Metro

undercover officer met Smith at his apartment in Springfield and ordered a quarter kilogram of cocaine for $6,500. Smith, along with another unidentified individual, proceeded to the address of 202 10th Avenue in Springfield. The building at this address was "a twenty by ten foot concrete shed" and had only one door. Metro Detective Jessie Birchwell in describing the building as a typical crack-house explained:

> [T]here's a window and it is boarded up, but actually inside of the window, it has a cut open a piece with a slide that slides up and down and it is typical of what you see in crack houses, that way you don't have to actually enter the building. They just slide it open and put the money inside and slide the crack cocaine outside. That way you never have to actually go inside the building.

Upon arriving at the building, Smith and the other individual went inside for approximately two to three minutes. Both men exited, with Smith carrying a small rectangular box, and they then returned to Smith's apartment. A search warrant was later executed at Smith's apartment, and the quarter kilo of cocaine was found in the box.

The officers returned to the building at 202 10th Avenue, approximately ten to fifteen minutes after leaving that location to follow Smith back to his apartment. Upon arriving at the building, the officers loudly knocked on the door and announced their presence; no response was received. Detective Birchwell left after a couple of minutes in order to obtain a search warrant for the building. Sergeant Rob Forest was left at the location by himself. About an hour after the police returned to the scene, the door suddenly opened, and the [petitioner] and another individual ran out. The [petitioner] was captured and handcuffed, but the other individual escaped. Detective Birchwell again arrived at the scene. Officer Forest testified that the following events then transpired:

> Q. Did you notice anything unusual inside the shed once the door was open?

> A. Yes, sir, the commode was running over, the water was running out on the floor.

Q. Did you and Officer or Detective Birchwell do anything regarding that?

A. Yes, sir, it looked like the bottom of the commode was stopped up with what looked like cocaine, rock cocaine. I scooped my hand down into the water and retrieved as much as I could reach out of the commode.

Q. And ultimately, did you take the commode outside?

A. Yes, sir, we had to take it outside and actually break the commode apart because in one of the chambers where the water goes through to down into the sewer, it was clogged full of cocaine, or what looked like cocaine to me.

Q. Now, based on your observations, Sergeant, was that commode overflowing at the time that the two individuals ran out the door?

A. Yes, sir. It was very hot in there also. Mr. Gardner was wringing wet with sweat and I don't think they had any air conditioner.

The substance discovered in the toilet was later determined to be 381 grams of cocaine, which had an estimated street value of "a little over three hundred thousand dollars."

State v. Tim D. Gardner, No. M2001-01436-CCA-R3-CD, 2003 WL 367237, at **1-2 (Tenn. Crim. App. at Nashville, Feb. 20, 2003). At the conclusion of the proof, the petitioner was convicted of possessing over 300 grams of cocaine with intent to sell.

Thereafter, the petitioner filed a petition for post-conviction relief, raising several issues, including ineffective assistance of counsel. At the post-conviction hearing, the petitioner testified that trial counsel met with him only twice prior to trial. The petitioner stated that he did not receive a copy of the indictment or the warrant for his arrest. Additionally, the petitioner maintained that counsel did not discuss with him the information counsel obtained after interviewing witnesses. The petitioner stated that counsel should have hired an investigator, and that counsel "could've did a better job than what he done" in preparation for trial. The petitioner asserted that he tried to contact counsel regarding his appeal, "but it was like what I wanted to tell him really didn't matter."

The petitioner contended that trial counsel failed to object to numerous statements made during the State's proof. Specifically, the petitioner complained that counsel did not object when the State asked the petitioner at trial if he had ever heard of a gang called the "Springfield Soldiers." The petitioner stated, "I ain't never heard of nothing like that. . . . [I]t was like he was putting me in organized crime or something, you know, just like I'm – again, I'm the bad guy. . . . I just go around terrorizing the neighborhood." However, the petitioner conceded that no testimony at trial implicated the petitioner's involvement with the "Springfield Soldiers."

The petitioner also contended that counsel should have objected when the State's witnesses testified that there was a microwave in the building where the cocaine was found, explaining that crack cocaine could be "cooked" in a microwave. The petitioner complained that "I felt just because it was a microwave in the building and – or whatever, he's just going to holler that's how they cook up cocaine." The petitioner maintained that counsel should have objected when Detective Birchwell testified at trial that a measuring cup containing cocaine residue was found in the building where the cocaine was discovered. The petitioner further maintained that counsel should have objected to testimony regarding the discovery in the building of lots of little plastic baggies for the packaging of crack cocaine. Counsel also failed to present "concrete evidence" regarding the medications petitioner was taking on the day he was arrested.

The petitioner argued that counsel should have objected when the State, during closing arguments, said that the petitioner lied during his trial testimony. The petitioner complained that "to me that's persuading the jury to go against me by what he's saying – by the words that coming out of his mouth. . . . And, you know, when you got thirteen against one man, you know, it's – it's very – it's hard to beat."

The petitioner's trial counsel testified at the post-conviction hearing that he and the petitioner "met and talked on the phone on several occasions." Counsel stated that he received extensive discovery prior to trial. He said that he discussed the indictment with the petitioner on at least one occasion. Trial counsel recalled that he interviewed the "main officers" in the case multiple times and discussed the results of the interviews with the petitioner. Counsel stated, "I would not have excluded him from knowing what these people were going to say when they came to trial." Additionally, counsel testified that he discussed the appeal with the petitioner several times.

Counsel admitted that he did not object to the State presenting proof regarding the "Springfield Soldiers," the cooking of crack cocaine in the microwave, the measuring cup containing cocaine residue, or the plastic baggies found in the building. Trial counsel explained that there was no proof to connect the petitioner to any of the foregoing. Counsel further explained, "I think the trial strategy was to show that the month-and-a-half or so long investigation that was conducted in concert with both the officials here in Robertson County and those out of Davidson County produced nothing to do with [the petitioner]."

Counsel stated:

I felt like if the jury heard that someone else may have been doing this, that was good to [the petitioner's] case.

If they could not connect him to either the microwave, the beaker or the baggies, because I asked about those things and they could give no testimony whatsoever that [the petitioner] was connected to either the cocaine directly or the baggies or the beaker or the microwave, and I felt like if the jury heard that it might help rather than hurt.

Counsel further asserted that he did not object to the testimony because it was relevant, and he did not want to waste the trial court's time objecting to relevant evidence.

Counsel acknowledged that the petitioner had told him that he was taking several medications on the day of his arrest, and he surmised that he could have gone into more detail at trial regarding the type and amount of medications the petitioner was taking. The petitioner told counsel that the medication, combined with the heat of the day, made him "get sleepy and want to lay down for a while, which he said was common for him to have to do when he was on this medication just prior to his organ transplant."

Finally, counsel recalled that he orally amended the petitioner's motion for new trial to raise the issue of the State's comments during closing arguments. Counsel opined that the comments had been made to point out that the State's witnesses and the petitioner had told two opposing stories to the jury; therefore, someone had to be lying. Counsel stated that he had previously done extensive research on the issue of prosecutorial misconduct, and he decided that the comment "wasn't enough to carry any weight with any kind of appellate issue, so I did not object." Counsel conceded that his failure to object to the comment "might not have been exactly the best thing to do."

At the conclusion of the hearing, the post-conviction court found that the petitioner failed to carry his burden of proving his claims and dismissed his petition. On appeal, the petitioner contends solely that the post-conviction court erred in finding that counsel was effective.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings

of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

On appeal, the petitioner complains of the following specific instances of ineffective assistance: (1) trial counsel failed to adequately communicate with him; (2) trial counsel failed to object to various statements made by the State during trial, namely (a) reference to a gang named "Springfield Soldiers," (b) comments regarding the occupants of the building "cooking stuff up in the microwave," (c) testimony concerning the discovery in the building of "lots and lots and lots of little baggies" used for packaging crack cocaine, (d) statements about a measuring cup containing cocaine residue which was found in the building, and (e) the closing argument comment that the petitioner lied to the jury; (3) "trial counsel did not introduce evidence that the medications he was taking at the time of the arrest made him sleepy"; and (4) the cumulative effect of the errors denied the petitioner a fair trial.

The petitioner's first complaint concerns counsel's failure to properly communicate with him. Counsel testified that he met with and spoke with the petitioner on the telephone on several occasions. Counsel stated that he discussed the indictment with the petitioner. Additionally, counsel

stated that he conducted interviews of the witnesses and kept the petitioner apprised of the substance of those interviews. The post-conviction court, implicitly accrediting counsel's testimony, found that the petitioner "failed to establish that his attorney was ineffective by not spending more time in preparing directly with the [p]etitioner." We conclude that the evidence does not preponderate against this finding.

Next, we will address the petitioner's concerns regarding counsel's failure to object to comments regarding the "Springfield Soldiers," cooking crack in the microwave, cocaine residue on a measuring cup, and plastic baggies for the packaging of crack cocaine. At the post-conviction hearing, counsel stated that his strategy was to have the jury fully informed about the dealing of crack cocaine from the building. The defense theory was that someone other than the appellant was responsible for the manufacture and distribution of the cocaine from the building; the petitioner was just an innocent bystander who happened to wander into the wrong place at the wrong time. Counsel explained that he thought more evidence regarding the cocaine operation would help the petitioner demonstrate that someone else was behind the venture. Generally, "[a]llegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." Taylor v. State, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991). Our supreme court has explained:

> "Hindsight can always be utilized by those not in the fray so as to cast doubt on trial tactics a lawyer has used. Trial counsel's strategy will vary even among the most skilled lawyers. When that judgment exercised turns out to be wrong or even poorly advised, this fact alone cannot support a belated claim of ineffective counsel."

State v. Hellard, 629 S.W.2d 4, 9 (Tenn. 1982) (quoting Robinson v. United States, 448 F.2d 1255, 1256 (8th Cir. 1971)). Counsel's decision to not object to the foregoing proof was clearly a strategic one. We will not now second-guess that strategy.

The petitioner also complains that counsel should have objected to the State's comments during closing argument that the petitioner lied during his trial testimony. Our review of the record reveals that during closing argument the State pointed out the divergent account of events between the testimony of the petitioner and the State's witnesses. The prosecutor then suggested that after reviewing the differing accounts, the jury would conclude that the petitioner was lying. In its argument, the State contended that the testimony of the State's witnesses was logical given the facts, while the petitioner's version of events was not. This court has previously concluded that "[t]he bounds of proper argument largely depend upon the facts in evidence, the character of the trial, and the conduct of opposing counsel." Coker v. State, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995). In our opinion, the State's argument appears to be little more than a comment on the evidence. At the post-conviction hearing, counsel asserted that he believed the State's argument was not proper; however, he did not believe that the error would entitle the petitioner to appellate relief. We agree. Even if the comments were improper, the petitioner has shown no prejudice by counsel's failure to object to the State's closing argument.

The petitioner complains that counsel should have introduced more evidence concerning the type and amount of medication that he was on at the time of his arrest. At trial, the petitioner testified that he was in the area of the building where the drugs were found because he became ill while using the car wash next to the building. After taking medication, the petitioner became sleepy and went into the building to rest. He woke to find police outside of the door of the building. Police entered and found the crack cocaine. Our review of the trial transcript reveals that counsel questioned the petitioner thoroughly about the medicine he took prior to the arrival of the police and about the petitioner's health problems which necessitated the medicine. The post-conviction court noted that "[t]here was no proof at the post conviction hearing concerning medications that would cause [the petitioner] to fall asleep." We conclude that the petitioner has failed to meet his burden of proving by clear and convincing evidence that counsel was ineffective in this regard.

Finally, the petitioner maintains that the cumulative effect of counsel's errors entitles him to relief. In response to this contention, the post-conviction court stated that "[t]he court has found nothing upon which it could grant the Petition." We agree with the post-conviction court. The petitioner is not entitled to relief.

### III. Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE